IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JAMES A. DIXON                                                                                          PLAINTIFF

V.                                              NO. 10-5130

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                     DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff, James Alden Dixon, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

      Plaintiff filed his application for DIB on June 5, 2007, alleging disability since January 1, 1988, due to mild mental retardation; meniere's disease[1]; knee problems; hypertension; and loss of vision in one eye. (Tr. 63). Plaintiff maintained insured status from the alleged onset date of January 1, 1988, through December 31, 1992. (Tr. 61). Plaintiff's application was denied initially and upon reconsideration. (Tr. 61). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on October 7, 2007, where the Plaintiff, Plaintiff's wife, and a Vocational Expert (VE) appeared and testified. (Tr. 13-55). On February 10, 2009, the ALJ entered

---

[1] Meniere's disease is defined as hearing loss, tinnitus, and vertigo resulting from nonsuppurative disease of the labyrinth with edema. Dorland's Medical Dictionary 546 (31st ed. 2007).

1

a decision denying Plaintiff's request for a determination of disability. (Tr. 58). The ALJ found that the Plaintiff had the following severe impairments: loss of vision in one eye, and borderline intellectual functioning. (Tr. 63). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to:

> Perform a full range of work at all exertion levels but with nonexertional limitations stemming from monocular vision, which would have precluded exposure to mechanical equipment, hazards and heights, and the Plaintiff was also limited as a result of borderline intellectual functioning to perform only simple, routine and repetitive tasks.

(Tr. 65-67). The ALJ found, with the assistance of the VE, that from the date of the alleged disability onset through the date last insured, the Plaintiff was unable to perform past relevant work as a meter reader. (Tr. 67). The ALJ further found there were jobs in the national economy that Plaintiff could perform, such as a hand packer, meat processor, or housekeeper. (Tr. 68). Plaintiff's request for review was denied by the Appeals Council on May 25, 2010, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 2-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 3). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 5, 6).

**Evidence Presented**

Plaintiff was born in 1949 and completed the 6th grade. (Tr. 19). Plaintiff was married in 1967 and later raised two sons. (Tr. 23, 32). Plaintiff was previously employed by the City of Bentonville as a meter reader, as well as by his brother, performing odd jobs as an automotive

mechanic at Dixon Auto Sales[2]. (Tr. 124). Plaintiff was hired by the City of Bentonville as a meter reader in 1970, and continued this work until 1983, when the city began using digital readers. Plaintiff was then unable to read and fill out the new paperwork that went along with the reader. (Tr. 29-30). Plaintiff testified that the last full-time job he held was as a meter reader. (Tr. 27). Plaintiff worked for his brother at Dixon Auto Sales in 1994 and 1995, doing odd jobs, such as changing oil in cars, lifting tires, wheels, tools and jacks. (Tr. 139-140). He further stated that he had lifted 100 pounds or more, and frequently lifted 25 pounds. (Tr. 140).

On July 2, 1985, Plaintiff was shot in the back of the knee of the right leg with a small caliber pistol by his son. (Tr. 184-186). Plaintiff's wife testified that one year later, in 1986, Plaintiff had surgery to remove bullet fragments from behind his right knee. (Tr. 36). Plaintiff's wife further testified that there was nothing further the doctors could do for the Plaintiff after they removed the bullet fragments[3]. (Tr. 36).

Between May 29, 2001, and July 13, 2001, Plaintiff was seen at the Hurst Eye Clinic nine times for pain in his left eye. (Tr. 192-200). The examining optometrist noted a corneal scar in the left eye. The remaining notes and records of eye care were illegible. (Tr. 192-200).

On May 7, 2007, an Intellectual Assessment was conducted by Steve A. Shry, Ph.D. (Tr. 201-202). Two tests were administered to the Plaintiff, the Wechsler Adult Intelligence Scale III, and the Wide Range Achievement Test III. (Tr. 201). The results from the Wechsler test were as follows: verbal 70, performance 61, and full scale 63. (Tr. 201). These results placed Plaintiff in

---

[2]The ALJ pointed out that this work was only part-time and therefore only probative as to daily activities of the Plaintiff during that time. (Tr. 65).

[3]Although the allegation of the gunshot wound was corroborated by a police report, there were no medical records documenting any treatment or surgery alleged by the Plaintiff. (Tr. 184-186).

the "Mild Mentally Retarded Range" of current intellectual functioning. (Tr. 201). The Wide Range Achievement Test results placed Plaintiff at a 2nd grade equivalency level for reading and arithmetic, and a 1st grade equivalency level for spelling. (Tr. 202). Dr. Shry concluded:

> Overall, client appears to be significantly impaired in adaptive functioning, particularly in short-term memory areas and the ability to put his thoughts into words. He has difficulties in focusing on detail and, because of his short-term memory problems, would have much difficulty following instructions.

(Tr. 202). Dr. Shry's diagnostic impression was:

> Axis I: Mild Mental Retardation;
> Axis V: GAF 45-55.

(Tr. 202).

In a June 13, 2007 Disability Report, a field office examiner noted Plaintiff had difficulty with reading, understanding, coherency, and answering. (Tr. 137). It was also noted that Plaintiff did not have difficulty with hearing, breathing, concentrating, talking, sitting, standing, walking, seeing, using hands, or writing. (Tr. 137). In an undated Disability Report-Appeal, Plaintiff stated that he was in a state of depression and had pain in both legs. (Tr. 164). Plaintiff further stated that he could not stand, sit or walk for long periods without rest. (Tr. 164).

On June 21, 2007, the Social Security Administration sent requests for medical records from January of 1987, through December of 1993, to Dr. John Kendrick at Ozark Orthopedics & Sports Medicine Clinic, and St. Mary-Rogers Memorial Hospital. (Tr. 203-211). On July 3, 2007, the same request was sent to Washington Regional Medical Center. (Tr. 203-211). The Social Security Administration further requested information from the same health care providers regarding Plaintiffs' ability to do work activities, and any specific clinical and/or laboratory findings for any limitations noted. (Tr. 203-211). No records were found for the time period requested. (Tr. 203-

211).

On September 4, 2007, the Social Security Administration sent an additional request for medical records from January of 1986, through 1990, to Ozark Orthopedics and Sports Medicine Clinic. (Tr. 213-215). Once again, no records were found for the time period requested. (Tr. 213-215).

On September 22, 2007, Plaintiff presented himself to the emergency room at Northwest Medical Center in Bentonville, complaining of dizziness, nausea, and elevated blood pressure. (Tr. 219-223). The clinical impression was hypertension and dizziness. (Tr. 222). On September 26, 2007, an x-ray of Plaintiff's chest and a CT brain scan reflected no acute pulmonary abnormalities, or acute intracranial abnormalities. (Tr. 224).

On December 12, 2007, Plaintiff was seen by Dr. Raymond Bandy at Mercy Health System of Northwest Arkansas, Rogers Diagnostic Clinic. (Tr. 238). The report stated that Plaintiff suffered from hypertension, fatigue, dizziness, weakness, parasthesias in his left thigh and near syncopal episodes, as well as joint and back pain. (Tr. 238). Dr. Bandy noted Plaintiff had been blind in the left eye for approximately 40 years. (Tr. 238). Dr. Bandy's Impression and Plan was:

> 1. Hypertension. Add Vasotec 5 mg PO q day to the Metoprolol 50 mg PO q day.
> 2. Chronic obstructive pulmonary disease. Begin Advair Diskus 250/50 one inhalation b.i.d.
> 3. Cigarette use. We have encouraged the patient to stop smoking. We offered him Chantix, but they do not have any resources to be able to afford this and he seems to have low motivation to stop smoking.
> 4. Health maintenance. The patient does not have insurance. We will try to check lab and get a colonoscopy scheduled.
> 5. Actinic keratosis on his face. We will refer to Dr. Hull.
> 6. Possible emaurosis fugax. We will control the patient's hypertension. We will place him on a baby aspirin one PO q day and if we can, given the patient has no insurance, we will check an echocardiogram and carotid Doppler flow studies. If the patient has a recurrent episode he is to follow up in the emergency room immediately.
> 7. Follow up with this patient is to be p.r.n. and is to be in one week.

(Tr. 239).

Plaintiff then saw Dr. Bandy on December 19, 2007 and January 14, 2008, and in a Progress Note dated August 22, 2008, Dr. Bandy assessed Plaintiff with:

> HTN (Hypertension); watch BP, and if continues up as an OP then RTO;
> Hyeprcholesterolemia; Check at next visit
> Tobacco Use Disorder; chantix
> COPD (Chronic Obstructive Pulmonary Disease); Advair
> Samples BID
> Prostate Cancer Screening; See HM
> Osteoarthritis; PRN pain meds, follow shoulders.

(Tr. 245)

On September 17, 2008, in a Medical Source Statement, Dr. R. Bailey found Plaintiff had the ability to: frequently lift and/or carry ten to twenty-five pounds; occasionally lift and/or carry fifty pounds; stand and/or walk three hours out of an eight hour workday; sit a total of three hours in an eight hour workday; and push and/or pull (including hand/or foot controls): limited in upper and lower extremities. Dr. Bailey also opined that Plaintiff would require five or more work/bathroom breaks in an eight hour workday; would need to lie in the supine position for a total of two hours in an eight hour workday; and was limited to less than two hours in an eight hour workday climbing, balancing, squatting, kneeling, crouching, and bending. Plaintiff's manipulative limitations included less than two hours in an eight hour workday for: reaching in all directions; handling; fingering; gripping; and feeling. (Tr. 232). Dr. Bailey further opined that Plaintiff should avoid all exposure to: extreme cold; extreme heat; wetness; humidity; noise; vibration; fumes; odors; dusts; gases; poor ventilation; machinery; and heights. (Tr. 231-233).

Dr. Bailey completed a Physical RFC Assessment, Abbreviated, on September 17, 2008, wherein he found that Plaintiff could not: sit for six hours in an eight hour workday; sit/stand/walk

in combination for eight hours in an eight hour workday; or perform part-time work activities of any nature for more than ten hours in a forty hour work-week. (Tr. 235). Dr. Bailey further found that Plaintiff required four or more unscheduled work breaks in an eight hour work-day due to physical restrictions; had significant limitations in the ability to reach/push/pull bilaterally in the upper extremities; and had significant limitations in the ability to handle and work with small objects with both hands. (Tr. 235).

In a Mental RFC Assessment dated September 25, 2008, Dr. Shry stated that Plaintiff was either "poor or markedly limited" in his ability to:

> remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without supervision; respond appropriately to supervision, co-workers, and usual work settings; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; complete a normal work-day and work-week without interruptions from physiologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavior extremes; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; set realistic goals; follow work rules; function independently; behave in an emotionally stable manner; relate predictably in social situations, and demonstrate reliability and work without deterioration or decompensation causing the individual to withdraw from the situation or to experience exacerbation of symptoms or adaptive behaviors.

(Tr. 236-237).

**Applicable Law**

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massananari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantially gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for longer than at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listing; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education and experience. See 20 C.F.R. §416.920. Only if the final stage is reached

does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.3d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

### A. Relevant Time Period

For purposes of DIB, the relevant time period in this case is Plaintiff's alleged onset date of the disability through the date last insured - January 1, 1988 to December 31, 1992. Plaintiff must show his disability existed during or prior to the relevant time period. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). (holding that Plaintiff was not entitled to DIB where she could not prove she was disabled prior to the date last insured).

### B. Plaintiff's Impairments

In his decision, the ALJ found that Plaintiff had the severe impairments of loss of vision in one eye and borderline intellectual functioning. The ALJ found that Plaintiff's mental impairment did not meet or equal the listed requirements for mental retardation during the relevant time period. The ALJ recognized that through counsel, Plaintiff interpreted the Listings as requiring, for purposes of establishing the existence of mental retardation, (1) only an I.Q. score of 60 through 70 (established for Plaintiff by Dr. Shry's one-time psychological report dated well after both Plaintiff's date last insured and his attainment of age 22) and (2) an additional and significant work-related limitation of function ( for which Plaintiff proffered the assessment by Dr. Bandy of Plaintiff's 40-year history of blindness in the left eye). The ALJ addressed this issue as follows:

> When faced with this issue recently, the Eighth Circuit agreed with the Commissioner in *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) that, in addition to the medical standard for mental retardation being not identical to the legal standard, the requirements in

9

> the introductory paragraph of 20 CFR Pt. 404, Subpt. P, App. 1, section 12.05 are **mandatory.** Further, the Eighth Circuit has held that a claimant's I.Q. score can be disregarded when it is derived from a one-time examination by a non-treating psychologist, particularly if the score is inconsistent with the claimant's daily activities and behavior. *Muncy v. Apfel*, 237 F.3d 728, 733 (8th Cir. 2001). Even as the claimant relies on the 2007 findings of Dr. Shry contained in Exhibits 2F and 15F to support the allegation of having been disabled during the relevant time period as a result of what Dr. Shry diagnosed as mild mental retardation, the undersigned finds the requisite deficits in adaptive functioning have not been demonstrated. The analytical considerations considered essential for the determination of mental retardation as enumerated in the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. Text revision 2000), are "significantly subaverage general intellectual functioning ... accompanied by significant limitations in adaptive functioning in at least two [enumerated] skill areas...." In light of the claimant's daily activities and behavior during the relevant time period, the undersigned instead finds that the claimant had a nonexertional mental impairment no more severe than borderline intellectual functioning.
>
> Therefore, the undersigned's treatment of Dr. Shry's report here does not involve the substitution of judicial conjecture for medical opinion but instead involves recognizing what amounts to a discrepancy between Dr. Shry's medical standard for mental retardation and the legal standard to which the undersigned must adhere to determine a claimant disabled as a result of mental retardation. ...

(Tr. 65). The ALJ stated that Plaintiff's condition was mischaracterized as mild mental retardation, and therefore, the analysis otherwise set out in listing 12.05 was inapplicable. (Tr. 66). The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. After reviewing the record and relevant listings, the Court believes there is substantial evidence to support the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

### C. Plaintiff's Credibility

In his decision, the ALJ stated that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible, to the extent they were inconsistent with the RFC assessment. The ALJ then gave careful consideration to all of the relevant factors in

making the determination. In <u>Polaski v. Heckler</u>, 739 F.3d 1320, 1322 (8th Cir. 1984), the Eighth Circuit Court of Appeals stated that the ALJ may discredit subjective complaints of pain if there are inconsistencies in the evidence as a whole. <u>Id</u>. The factors the ALJ is to consider when determining if the Plaintiff's complaints of pain are credible include: the absence of an objective medical basis that supports the severity of the subjective complaints; Plaintiff's daily activities; the duration, frequency, and intensity of the Plaintiff's pain; precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and functional restrictions. <u>Id</u>. If the ALJ discredits the testimony and explicitly gives good reason for doing so, the Court is bound by the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992); <u>see also</u> <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008); <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007).

  Plaintiff claimed that his borderline intellectual functioning affected his life to the point he was unable to work. However, Plaintiff was able to work a full-time job for the city of Bentonville for thirteen years. Plaintiff was also married at the age of eighteen, and was able to raise and sustain a family. A review of the record reveals that ten years from the time he left his job with the City of Bentonville in 1983, and six years after the onset date of his alleged disability, Plaintiff worked for his brother at Dixon Auto Sales. Although Plaintiff had borderline intellectual functioning, he was able to complete routine tasks as an auto mechanic. Plaintiff stated he would do odd jobs around the business, such as changing spark plug wires, removing and rearranging the wheels on the vehicles, and changing the oil and air filters in vehicles. (Tr. 140). To complete these tasks, Plaintiff stated he would walk around the lot, carrying whatever he needed to fix a car, such as wrenches and manual jacks. (Tr. 140). Plaintiff also stated during his course of employment he would lift tires, wheels,

11

tools, and jacks.  Plaintiff stated he had also lifted 100 pounds or more while working there.  (Tr. 140).

The Court also notes that regarding Plaintiff's blindness in his left eye, he was able to work as a meter reader and as an auto-mechanic.

The Plaintiff stated one of his disabilities stemmed from menieres disease, an inner ear disorder which causes dizziness.  However, during an emergency room visit to Northwest Medical Center on September 22, 2007, Plaintiff reported that his dizziness had begun approximately one year earlier in 2006, close to fourteen years after his insured status had expired.  (Tr. 220).

The Court believes the ALJ considered all the relevant factors required in Polaski and gave good reason for discrediting Plaintiff's allegations of pain.

### D. Residual Functional Capacity

The ALJ found Plaintiff had the RFC to perform work at all exertional levels with nonexertional limitations stemming from monocular vision and borderline intellectual functioning. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646

(8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ considered the medical assessments of the examining agency medical consultant, the non-examining consultant, the other medical records, and Plaintiff's subjective complaints. Plaintiff's ability to perform a full range of work at all exertional levels, but with nonexertional limitations stemming from monocular vision, is supported by the inconsistencies in Plaintiff's activities and abilities, reflected in the record as a whole.

Regarding Plaintiff's borderline intellectual functioning, IQ scores must be valid and the Commissioner need not rely exclusively on IQ scores, and may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole. Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005)(quoting Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001). While the ALJ found that Plaintiff suffered from borderline intellectual functioning prior to his alleged disability onset date of January 1, 1988, his ability to hold down a full-time job for the City of Bentonville, as well as to sustain a marriage and a family suggest he did not have a severe enough limitation in adaptive functioning that would have lead to a finding of disability. The documents fail to show that during the relevant time period - January 1, 1988, through December 31, 1992 - Plaintiff's borderline intellectual functioning deteriorated to the point he was no longer able to work in the national economy. This failure would not preclude Plaintiff from filing for SSI benefits if he could show a current deterioration in his alleged disabilities from the onset date. However, for a DIB determination, the records do not support a finding that Plaintiff suffered the disability prior to the date last insured. See Cox, 471 F.3d at 907. (holding that Plaintiff was not entitled to DIB, where she could not prove she was disabled prior to the date last insured).

With regard to the Plaintiff's lack of vision in his left eye, although this was determined to be a severe impairment, he was still able to perform tasks as a full-time employee for the City of Bentonville and later part-time as an auto mechanic. Thus, even with limited vision he was able to perform work in the national economy. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

**E.  Hypothetical Question Proposed to Vocational Expert**

The ALJ proposed the following question to the VE:

> If you'll assume, a younger hypothetical claimant[4] who is functionally illiterate with the following RFC. He is capable of a full range of work, but can have no exposure to mechanical equipment, has needed precautions consistent with monocular vision, with limited peripheral vision, which would include at a minimum, no heights and no work place hazards. Are there any unskilled jobs that such an individual could perform?

(Tr. 50). In response to the hypothetical, the VE stated that there would be work available in housekeeping, meat packing, and hand packing at an unskilled level. The ALJ then followed up with a second question to the VE:

> Can you identify any unskilled occupations that an individual in the light range, along with the sit/stand option have?

(Tr. 51). In response to the second hypothetical, the VE stated there would be work available in hand packing, at a light exertional level, with the rest of the limitations in tact.

After throughly reviewing the hearing transcript, along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart,

---

[4]The Plaintiff maintained insured status through December 31,1992. Therefore, the ALJ requested information in regards to a person the same age as the Plaintiff would have been at the date last insured.

14

421 F.3d 785, 794 (8th Cir. 2005). Following thorough review, the Court finds substantial evidence supports the ALJ's determination that Plaintiff could perform work as a housekeeper, hand packer, or meat processor.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the ALJ's decision. Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 5th day of August, 2011

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE